IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:06-CV-274-FL

| | |
|---|---|
| EVELYN S. JOHNSON, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings. Claimant Evelyn S. Johnson seeks judicial review of the Commissioner's denial of her application for Disability Insurance Benefits (DIB). After a thorough review of the record and consideration of the briefs submitted by counsel, it is recommended that Claimant's Motion for Judgment on the Pleadings [DE-19] be denied and Defendant's Motion for Judgment on the Pleadings [DE-27] be granted.

## STATEMENT OF THE CASE

On October 10, 2003, Claimant filed an application for DIB, alleging disability beginning on March 1, 2002 due to blindness in her left eye, degenerative bone disease, and back problems. Claimant's application was denied initially and upon reconsideration. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on January 6, 2005. After the hearing, on April 7, 2006, the ALJ issued a decision denying plaintiff's claims. The Appeals Council denied Claimant's request for review on September 29, 2006, rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the

Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. The Standard of Review and Social Security Framework

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also 42 U.S.C. § 405(g) (2006). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

This court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, in determining whether substantial evidence supports the Commissioner's decision, the court's review is limited to whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments which significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se.

If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity (RFC) is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience, and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert (VE), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the ALJ committed the following errors: (1) failure to consider all of the medical evidence in the record; (2) failure to perform a proper credibility assessment; and (3) improper hypothetical presented to the VE.

## II. The ALJ's Findings

In making the decision in this case, the ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920, and found that Claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision. (R. 21). Then, the ALJ proceeded to step two to determine whether Claimant had a "severe" impairment or combination of impairments which significantly limited her from performing basic work activities. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). The ALJ found that Claimant suffered from the severe impairments of depressive disorder and degenerative disc disease. (R. 21). However, at step three the ALJ determined that Claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 22). Next, the ALJ determined Claimant's RFC by considering all of her subjective complaints and reviewing her medical records, and concluded that she had the ability to perform light, unskilled work activity. (Id.). At step four, the ALJ found that although Claimant had past relevant work experience as day care worker, certified nurse assistant, and cashier, she could not return to her past relevant work. (R. 25). At step five the ALJ determined that Claimant could perform the work of a cashier II, office helper, and mail clerk. (R. 26). Accordingly, Claimant was not under a "disability," as defined in the Social Security Act, at any time prior to the date of the ALJ's decision. (Id.).

## III. The Administrative Hearing

### A. Claimant's Testimony at the Administrative Hearing

Claimant testified at her administrative hearing. (R. 356-82). Claimant was born on September 23, 1955. (R. 357). She is right-handed, 5' 5 ½" tall, and weighs 194 pounds.

4

(Id.). Claimant has been married to her current husband for six years. (Id.). She has two children from a previous marriage and her husband has four children from a previous marriage. (Id.). None of the children live at home. (R. 358). Claimant and her husband currently rent their home for $250 per month. (Id.). Claimant completed high school and two years of college, but she is not currently employed. (Id.). Claimant testified that her husband does not work and receives Social Security disability benefits of $963 per month for his back problems. (R. 359). Claimant also receives $45 per month in food stamps. (Id.). In terms of daily chores, Claimant stated that her husband does more household work that she does. (Id.). Claimant is currently on Medicaid and has been receiving those benefits for approximately one year. (R. 360)

Claimant was last employed in 2000 by Health Care Options as a nurse assistant. (R. 361). She stopped working in February 2000 due to medical problems. (R. 362). Claimant applied for another nurse assistant job in 2005 but was not hired. (Id.). She applied because she was told she could have a sit/stand option with the job. (R. 362-63). Claimant stated that she initially applied for disability in 2000, but when she was denied, she did not ask for a hearing and instead tried to find another job. (R. 363). After being unable to find work, Claimant again applied for disability in October 2003. (Id.).

Claimant worked at Health Care Options for about six to eight months. (R. 364). That job required Claimant to lift patients. (Id.). Prior to that, Claimant worked at Super 10 as a cashier, and eventually as a manager. (Id.). That job required Claimant to be on her feet often. (Id.). Claimant left Super 10 after about six months because the store went out of business. (Id.). Prior to working at Super 10, Claimant worked at Kentucky Fried Chicken for two or three months as a hostess and janitor. (R. 364-65). Prior to that,

5

Claimant worked full-time for two years at Prackson VanWarren Head Start as a teacher's assistant. (R. 365). As a teacher's assistant, Claimant did not do any lifting, but was on her feet often. (Id.).

Claimant testified that her back problems require her to change positions from sitting to standing frequently. (R. 367). She often has pain down her leg, in her hips, and numbness in her foot. (R. 367-68). This pain began in 2000, although Claimant stated that in 2004 she felt it was bad enough that she could not work. (R. 368). Claimant is currently seeing Drs. Frost and Turner for her back. (Id.). Dr. Turner works at the neurosurgery clinic at Duke and Dr. Frost works at a pain clinic. (Id.). Although Claimant has received injections in her back, the pain persists. (R. 368-69). Claimant takes the medication Tramadol and is scheduled for back surgery on January 17, 2006 with Dr. Turner. (R. 369). Until her surgery Claimant is limited in her activities and is mostly on bed rest. (Id.). The surgery entails a L3/4 decompression and fusion. (R. 370).

Claimant also testified that she has carpel tunnel syndrome in both hands. (R. 371). She's already had surgery on her left hand and will soon have it on her right hand. (Id.). However, right now she is unable to hold on to things with her right hand and can't twist bottles. (Id.). Claimant also believes she needs another surgery on her left hand because she has numbness in her left pinky finger and thumb.[1] (Id.). Claimant stated that she has heart trouble, including a leaky valve, for which she's being treated by Dr. Sessions, her cardiologist. (Id.). This causes her to be short of breath; however, Claimant is taking two medications for her heart. (R. 372).

---

[1] At this point, the ALJ pointed out that there was no documented evidence in the record regarding carpel tunnel syndrome. (R. 371).

Claimant has attended a mental heath clinic in the past for her depression, and currently takes Depakote. (Id.). She began taking this medication in 2004, but then stopped after a month. (R. 373). Her doctor recently told her to begin taking it again. (Id.). Claimant's doctor actually diagnosed her with bipolar disorder when she first began taking medication, but Claimant believes she just has depression. (R. 374). Claimant stopped attending the mental health center because her counselor stopped working there and Claimant was told that no one had been hired to replace her. (R. 375). Claimant's depression caused her to be very emotional and have crying spells. (Id.). Claimant is now taking Lexapro along with the Depakote. (R. 376).

Claimant is legally blind in her left eye and can only see light. (Id.). Claimant had these eye problems when she worked at the Super 10, but she was still able to do her job. (Id.). In fact, Claimant has been legally blind in her left eye all of her life, so she has learned to compensate with her right eye. (R. 377). Before she was approved for Medicaid, Claimant received medical benefits through vocational rehabilitation. (R. 377-78). Vocational rehabilitation found the nurse assistant job for which Claimant applied, but was not hired in 2005. (R. 378). This program also required her to take some educational classes in 2003 in the medical assistant program. (R. 379). Claimant attended classes one hour during the day and one hour during the afternoon. (R. 380). She stopped taking the classes in December 2005. (Id.). During the classes, Claimant was permitted to sit in the back of the classroom so she could stand when she felt discomfort. (R. 381).

Claimant is able to do very few activities of daily living. (Id.). It takes her an hour and a half to make the bed because she has to sit frequently. (Id.). She does not do any sweeping, but sometimes does a little dusting. (Id.). Claimant stated that bending is hard

7

for her and her husband helps her with bathing and personal care. (Id.). Finally, Claimant testified that most of her medication makes her sleepy. (R. 382).

### B. The Vocational Expert's Testimony at the Administrative Hearing

Ann Neulicht testified as a VE at the administrative hearing. (R. 382-86). The VE stated that she had reviewed Claimant's documentary evidence prior to the hearing and was present throughout Claimant's testimony. (R. 383). The VE described Claimant's past relevant work as a day care worker as light, semi-skilled work with a Specific Vocational Preparation (SVP) of 4 and a Dictionary of Occupational Titles (DOT) code of 359.677-018. (Id.). She described Claimant's past work as a certified nurse assistant as medium, semi-skilled work with an SVP of 4 and a DOT code of 355.674-014. (R. 384). She described Claimant's past work as a cashier as light, unskilled work with an SVP of 2 and a DOT code of 211.462-010. (Id.). The ALJ posed a hypothetical by asking the VE to assume that Claimant has the ability to perform light work, but due to back pain she needs a sit/stand option, and due to a depressive disorder and concentration problems she would be restricted to performing simple, routine, repetitive tasks. (R. 385). The ALJ then asked the VE whether there were jobs in the region that Claimant could perform, based on her age, education, training, and background. (Id.). VE responded affirmatively. (Id.). According to the VE, such an individual could perform the following jobs: cashier/parking lot attendant, light with DOT code 211.462-010; office helper, light with SVP 2 and DOT code 329.567-010; and mail clerk, light with SVP 2 and DOT code 209.687-026. (R. 385-86).

## IV. Claimant's Arguments

### A. Consideration of All Medical Evidence

Claimant argues that the ALJ failed to consider the medical evidence of Drs. Turner, Fras, and Deol when he determined that Claimant had the RFC to perform light work. Claimant contends these doctors' opinions contradict that RFC such that the ALJ's determination is not supported by substantial evidence. The court disagrees.

Under the Commissioner's regulations, controlling weight is given to the opinion of a treating source on the issues of the nature and severity of an impairment if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2); see Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (noting that an ALJ should accord greater weight to a treating physician's opinion because the treating physician has developed a treatment relationship with the claimant). The ALJ clearly made note that he considered the entire record prior to making his determination. (R. 19). Then, in four and a half single-spaced typed pages, he summarized the majority of Claimant's medical records as well as Claimant's testimony. (R. 21-24). The ALJ was not required to comment on every piece of evidence in the record. E.g., Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005); Anderson v. Bowen, 868 F.2d 921, 924 (7th Cir. 1989). The ALJ focused on the opinions of Dr. Lang, who had treated Claimant for her back problems for years. (R. 23, 318). Dr. Lang reported that Claimant's symptoms were minimal and recommended no surgical intervention, and the ALJ gave those opinions great weight. (R. 24). Dr. Turner, however, was merely seen for a second opinion. (R. 318). Additionally, although Dr. Turner did

recommend spinal surgery, there is no indication that the impending surgery precluded Claimant from performing light work. (See R. 320). Notably, as the ALJ pointed out, although there are no medical records regarding the surgery, one day after it was scheduled, on January 18, 2006, a state rehabilitation counselor opined that despite Claimant's surgery, she "has restrictions to perform only light duty work." (R. 24, 110). This statement seems to indicate that Claimant's doctors had not advised Claimant to avoid all work, but merely to perform only light work.

Claimant also argues that the ALJ failed to adequately discuss the medical records from Dr. Fras and Dr. Deol. Claimant points out that the ALJ did not mention that she reported pain of 10/10 on January 4, 2006 when she saw Dr. Fras. (See R. 314). However, during that visit with Dr. Fras, Claimant also reported that her back pain was generally 5/10, but happened to be 10/10 on that day. (Id.). Only two weeks after that visit to Dr. Fras, Claimant was reportedly restricted only to light duty work. (See R. 110). Nevertheless, as noted, the ALJ needed only to *consider* those records, which he did. (R. 19). He was not required to comment on them. E.g., Dyer, 395 F.3d at 1211; Anderson, 868 F.2d at 924.

Likewise, the ALJ's failure to mention Dr. Deol's assessment that Claimant had "concomitant stenosis," does not alter the ALJ's RFC determination. (See R. 304). The ALJ did discuss Dr. Deol's finding that Claimant had degenerative disc disease and therefore he obviously considered Dr. Deol's opinions. (R. 24). However, those opinions do not contradict the ALJ's determination that Claimant is capable of performing light work. Accordingly, the ALJ appropriately considered all the medical evidence in the record and his RFC determination is supported by substantial evidence.

10

## B. Credibility Assessment

Claimant argues that substantial evidence does not support the ALJ's findings that her allegations of pain and functional restrictions are not fully credible. The court disagrees.

In assessing a claimant's credibility, the ALJ must follow a two step process. First the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Next, the ALJ must evaluate the claimant's statements regarding those symptoms. Id. at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p. When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. See Ivey v. Barnhart, 393 F.Supp.2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

Here, the ALJ found that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. 23). The ALJ provided specific reasons for his adverse credibility findings. The ALJ summarized Claimant's medical records, which indicated that Claimant has only mild limitations resulting from her impairments. (R. 23-25). The ALJ noted that

11

on June 17, 2003 Claimant's occupational therapist stated that she could work at the light exertional level. (R. 23). Also on October 13, 2003, Claimant reported to Dr. Lang that both her depression and her back pain were controlled with medication. (Id.). Where impairments can be controlled with medication, they are not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Although Claimant's back pain appears to have increased in 2005 such that she received a second opinion from Dr. Turner regarding back surgery (R. 318), by January 18, 2006–one day after the scheduled surgery–Claimant was still only limited to light work. (R. 24, 110).

Claimant's assumption that the ALJ's determination that she satisfied the first prong of the credibility analysis necessarily means that she also satisfies the second prong is mistaken. If that were the case, there would be no purpose served in having a second step in the analysis. Instead, Claimant must show that other objective evidence, such as activities of daily living or other reported functional restrictions, support her subjective complaints. Here, as noted above, Claimant is unable to do so. So while claimant's impairments *could* be expected to produce the pain and functional restrictions alleged, the ALJ found sufficient evidence that they did not in fact produce such pain or restrictions.

The ALJ thoroughly explained his credibility analysis. The fact that Claimant can point to other evidence in the record that supports her claimed impairments and the alleged severity of her pain does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays, 907 F.2d at 1456. It is not the responsibility of this court to determine the weight of the evidence. Id. Here, the ALJ pointed to evidence in the record to support his conclusion that Claimant was not

totally credible. Therefore, he satisfied his duty under the applicable regulations and law and did not err in finding Claimant not fully credible.

C. **Hypothetical Posed to VE**

Claimant argues that the ALJ failed to adequately account for her mental impairments in the hypothetical posed to the VE. Claimant also contends that the hypothetical was flawed because it did not account for Claimant's significant pain. The court disagrees.

Courts have repeatedly held that questions to a VE must precisely set out the claimant's individual physical and mental impairments. Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir. 1989). However, the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992). If the ALJ does not believe that the plaintiff suffers from one or more claimed impairments–and if substantial evidence supports that conclusion–then the ALJ is not required to include those impairments in his questioning of the VE. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005).

In accordance with the Psychiatric Review Technique, the ALJ found that Claimant has moderate difficulties in maintaining concentration, persistence, or pace and is only mildly limited in performing activities of daily living and maintaining social functioning. (R. 21, 232). Claimant has experienced no episodes of decompensation. (R. 232). On the Mental RFC assessment form, it was noted that Claimant would have moderate limitations in her ability to complete a normal workday and workweek due to her psychological symptoms. (R. 237). Despite these limitations, the evaluating consultant, Gloria Edmunds, Ph.D., still found that Claimant could maintain and hold concentration well enough to

Case 4:06-cv-00274-FL  Document 29  Filed 01/14/08  Page 13 of 15

perform simple, routine, repetitive tasks. (R. 238). Additionally, Dr. Edmunds noted that while Claimant might have some difficulty with adaptation functions, she could follow directions and adjust to routine changes. (Id.). In accordance with Dr. Edmunds' findings, the hypothetical posed to the VE included the requirement that Claimant perform only simple, routine, repetitive tasks due to her depression and concentration problems. (R. 385). This was sufficient to account for Claimant's mental deficiencies and is based on the ALJ's RFC determination that Claimant "is limited to performing unskilled simple, routine, repetitive, tasks due to her depression." (R. 22).

In regard to Claimant's pain allegations, because the ALJ did not find Claimant to be fully credible with respect to those allegations, he was not required to include them in a hypothetical posed to the VE. See Johnson, 434 F.3d at 659. The court has already determined that the ALJ's RFC determination is supported by substantial evidence; therefore, the hypothetical, which was based on that RFC, was proper.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that Claimant's motion for judgment on the pleadings be **DENIED**, and defendant's motion for judgment on the pleadings be **GRANTED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum

and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This 14th day of January, 2008.

                                                                  /s/ David W. Daniel
DAVID W. DANIEL
United States Magistrate Judge